MICHAEL E. DERGOSITS (State Bar No. 118206)
TEDDY K. JOE (State Bar No. 242589)
DERGOSITS & NOAH, L.L.P.
Four Embarcadero Center, Suite 1450
San Francisco, CA 94111
Telephone: (415) 705-6377
Facsimile: (415) 750-6383
Email: mdergosits@dergnoah.com
Email: tjoe@dergnoah.com

Edward W. Goldstein (TX Bar No. 08099500) (Of Counsel)
Michael J. Collins (TX Bar No. 04614510) (Of Counsel)
Jody M. Goldstein (TX Bar No. 24002153) (Of Counsel)
**Goldstein, Faucett & Prebeg, LLP**
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 – Telephone
(713) 877-1737 – Facsimile
E-mail: egoldstein@gfpiplaw.com
E-mail: mcollins@gfpiplaw.com
E-mail: jgoldstein@gfpiplaw.com

Attorneys for Plaintiff Arete Power, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ARETE POWER, INC., | Case No. 07-5167 (WDB) |
| Plaintiff, | |
| vs. | **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE** |
| BEACON POWER CORPORATION | |
| Defendant. | Hearing: February 6, 2008, 1:30 p.m.<br>Courtroom: Judge Wayne D. Brazil,<br>Oakland, California |

TABLE OF CONTENTS

I.     Issue to be Decided ........................................................................................................1

II.    Statement of Relevant Facts ..........................................................................................1

III.   Argument and Authorities.............................................................................................4

   A.  Beacon Must Make a Strong Showing of Inconvenience to Overcome the Strong
       Presumption in Favor of Arete's Choice of Forum ....................................................4

   B.  Arete's Choice of a Proper Forum is Entitled to Great Weight Because Many If Not
       Most of the Operative Facts Have Occurred Here ....................................................5

   C.  Transferring the Case to Massachusetts Would Merely Shift the Inconvenience
       From Beacon's Witnesses to Arete's Witnesses........................................................6

   D.  The Other Section 1404(a) Factors Do Not Weigh Heavily in Either Party's Favor 12

   E.  This Patent Case Can Be Litigated More Efficiently Under the Local Patent Rules
       Adopted By This Court But Not Available In Massachusetts .................................13

IV.    Conclusion ...................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods.*,
  2006 U.S. Dist. LEXIS 75339 (N.D. Cal. 2006) .................................................................5
*Canton Bio-Meidcal, Inc. v. Integrated Liner Techs., Inc.*,
  216 F.3d 1367 (Fed. Cir. 2000) ..........................................................................................10
*Carolina Casualty Co. v. Date Broadcasting Corp.*,
  158 F.Supp.2d 1044 (N.D. Cal. 2001)............................................................................5, 12
*Datamize, Inc. v. Fidelity Brokerage Serv., LLC*,
  2004 U.S. Dist. LEXIS 29100 at *30 (E.D. Tex. 2004).....................................................14
*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir.1986)......................................................................................4, 5, 12
*Dorfman v. Jackson*,
  2005 U.S. Dist. LEXIS 32311 at *13 (N.D. Cal. 2005) ................................................4, 12
*Gates Learjet Corp. v. Jenson*,
  743 F.2d 1325 (9th Cir. 1984) ..............................................................................................6
*One Pass Water Blade, LLC v. Sun-Mate Corp.*,
  2006 U.S. Dist. LEXIS 74319 at *13-14 (N.D. Cal. 2006)...............................................4, 5
*Pac. Car & Foundry Co. v. Pence*,
  403 F.2d, 949 (9th Cir. 1968) ................................................................................................5
*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981).......................................................4
*Royal Queentex Enters. v. Sara Lee Corp.*,
  2000 U.S. Dist. LEXIS 10139 at *6-7 (N.D. Cal. 2000) ...................................... 4, 5, 6, 10
*Saleh v. Titan Corp.*,
  361 F. Supp.2d 1152 (S.D. Cal. 2005) .........................................................................6, 12
*Securities Investor Protection Corp. v. Vigman*,
  764 F.2d 1309 (9th Cir. 1985)...............................................................................................5
*Stuart Mershon v. Sling Media, Inc.*,
  2007 U.S. Dist. LEXIS 48613 at *5 (E.D. Tex. 2007) ......................................................11
*T-Netix, Inc. v. Global Tel*Link Corp.*,
  2007 U.S. Dist. LEXIS 71510 at * 12 (E.D. Tex. 2007) ..................................................14
*Van Dusen v. Barrack*,
  376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964).........................................................4

**Statutes**
28 U.S.C. § 1404 ...........................................................................................................passim
28 U.S.C. § 84 ...............................................................................................................3, 8
35 U.S.C. § 102(b)...............................................................................................................7
35 U.S.C. § 271 ...................................................................................................................6

Plaintiff Arete Power, Inc. ("Arete") files this brief in opposition to the motion of Defendant Beacon Power Corporation ("Beacon") to transfer venue to the District of Massachusetts under 28 U.S.C. § 1404(a) (the "Motion to Transfer"). Under the case law of this Court and the United States Court of Appeals for the Ninth Circuit, Beacon has failed to meet its heavy burden of overcoming the strong presumption in favor of Arete's choice of this Court as the forum in which to litigate this patent infringement action.

## I.    Issue to be Decided

Should this Court transfer venue of this patent infringement action to the District of Massachusetts for the convenience of the parties under 28 U.S.C. § 1404(a)?

## II.    Statement of Relevant Facts

Arete does not dispute that Beacon is a Delaware corporation with its principal place of business in the District of Massachusetts. (Motion to Transfer at p. 5.) Beacon correctly avers that Arete is a Nevada Corporation with its principal place of business in the District of Nevada. (Id.) Neither Beacon nor Arete has a place of business in the Northern District of California. (Id.) Dr. Christopher Gabrys is President and Chief Executive Officer of Arete. (Declaration of Dr. Christopher Gabrys, "Gabrys Decl.," attached hereto as Exhibit A, ¶3.) He is also the sole named inventor listed on U.S. Patent No. 6,710,489, the patent being asserted against Beacon in this litigation (the "patent-in-suit"). (Gabrys Decl., ¶6.) Dr. Gabrys conceived of the invention described and claimed in the patent-in-suit and was responsible for reducing it to practice by developing and constructing a working prototype. (Gabrys Decl., ¶7.) He is also the person within Arete most knowledgeable about the Flywheel Energy Storage System ("FESS") technology embodied in the patent-in-suit and the meaning of the patent claims. (Gabrys Decl., ¶8.) In addition, Dr. Gabrys is also the person within Arete who would be most knowledgeable about any disclosures of or offers to sell the invention to third parties prior to the date of the application for the patent-in-suit. (Gabrys Decl., ¶9) Dr. Gabrys currently resides in Reno, Nevada, where Arete has its principal place of business. (Gabrys Decl., ¶4.)

All of the business records of Arete are located in Reno, including all documents related to the conception and reduction to practice of the invention of the patent-in-suit, the development

1  of Arete's FESS technology, public and private disclosure of such technology to third parties,
2  and prosecution of the patent-in-suit. (Gabrys Decl., ¶10.)
3       In early spring of 2007, Dr. Gabrys became aware that Beacon had shipped a system
4  incorporating an array of Flywheel Energy Storage Systems ("FESS's") to San Ramon,
5  California where it was installed in a frequency regulation demonstration project for the
6  Commission for Environmental Cooperation ("CEC"). (Gabrys Decl., ¶11.) Beacon confirms in
7  the Motion to Transfer that this shipment to and installation in San Ramon did in fact take place
8  in September of 2005. (Motion to Transfer at p.6.) Arete requests that the Court take judicial
9  notice of the fact that San Ramon is located in the Northern District of California. Based on his
10 review of publicly available documents and information on Beacon's website, Dr, Gabrys
11 formed a belief that the FESS's installed in San Ramon infringed the patent-in-suit. (Gabrys
12 Decl., ¶12.)
13      At some later date, but prior to filing this patent infringement action, Dr. Gabrys became
14 aware that Beacon had shipped a similar system of FESS's to Amsterdam, New York where it
15 was installed in another frequency regulation project – this time for the New York State Energy
16 Research and Development Authority ("NYSERDA"). (Gabrys Decl., ¶13.) Beacon confirms in
17 the Motion to Transfer that it shipped a system of FESS's to Amsterdam in March of 2006.
18 (Motion to Transfer at p.6.) Based on his review of publicly available documents and
19 information on Beacon's website, Dr, Gabrys formed a belief that the FESS's installed in
20 Amsterdam also infringed the patent-in-suit. (Gabrys Decl., ¶14.)
21      At the time that Arete filed this patent infringement action, Dr. Gabrys was not aware of
22 any instances, other than the installations at San Ramon, California and Amsterdam, New York,
23 where Beacon had made, used, sold or offered to sell FESS's that embodied all of the elements
24 of a claim of the patent-in-suit. (Gabrys Decl., ¶15.)
25      The United States District Courthouse in Oakland, California is approximately 222 miles
26 by automobile from Arete's office in Reno, Nevada. (Gabrys Decl., ¶16.) Depending upon traffic
27 conditions, it takes about three and one-half hours to drive by way of Interstate 80. (Gabrys
28 Decl., ¶17.) Non-stop flights are available between Reno and Oakland and take approximately 50

1 minutes. (Gabrys Decl., ¶18.) It would be relatively convenient for Dr. Gabrys to attend hearings and trial in Oakland. (Gabrys Decl., ¶19.) It would also be relatively simple to transport Arete's business records from Reno to the Oakland Courthouse by automobile. (Gabrys Decl., ¶20.)

By way of contrast, the Courthouse in Boston is over 2500 miles from Arete's Reno office. (Gabrys Decl., ¶21.) A search on Travelocity.com by Dr, Gabrys failed to locate any direct flights between Reno and Boston. (Gabrys Decl., ¶22.)

Timothy Rodgers is Secretary-Treasurer and Chief Operating Officer of Arete. (Gabrys Decl., ¶23.) Mr. Rodgers is the person most knowledgeable about the chain of ownership of the patent-in-suit. (Gabrys Decl., ¶24.) Mr. Rodgers resides in Santa Barbara, California (Gabrys Decl., ¶25.), which is located in the Central District of California, a judicial district which is immediately adjacent to the Northern District of California. *See* 28 U.S.C. § 84. According to Google maps, his residence is approximately 330 miles and a five hour and twenty minute drive from the courthouse in Oakland. (Gabrys Decl., ¶26.) In the alternative, a search of Travelocity.com indicates that Mr. Rodgers can take advantage of non-stop flights that are available to travel between Santa Barbara and San Francisco in approximately one hour and ten minutes. (Gabrys Decl., ¶27.) Mr Rodgers has advised Dr. Gabrys that it would be relatively convenient for Mr. Rodgers to attend trial in Oakland. (Gabrys Decl., ¶28.)

By way of contrast, Mr. Rodgers' residence in Santa Barbara is over 2500 miles from Boston. (Gabrys Decl., ¶29.) A search on Travelocity.com failed to locate any non-stop flights operating between Santa Barbara and Boston. (Gabrys Decl., ¶30.)

J. Michael Neary, the attorney who prosecuted the patent-in-suit, resides in LaPine, Oregon (Gabrys Decl., ¶31.) in the District of Oregon. According to Google maps, LaPine is approximately 456 miles from Oakland and driving time between La Pine and Oakland is approximately seven hours and twenty minutes. (Gabrys Decl., ¶32.) A search on Travelocity.com indicates that non-stop flights between nearby Eugene, Oregon and San Francisco are available and take approximately one hour and thirty minutes. (Gabrys Decl., ¶33.)

According to Google maps, La Pine, Oregon is over 2500 miles from Boston. (Gabrys Decl., ¶34.) A search on Travelocity.com failed to locate any non-stop flights operating between

3

Eugene, Oregon and Boston. (Gabrys Decl., ¶35.) Mr. Neary has indicated to Dr. Gabrys that he would likely be available to testify at trial in Oakland but not in Boston. (Gabrys Decl., ¶36.)

### III. Argument and Authorities

#### A. Beacon Must Make a Strong Showing of Inconvenience to Overcome the Strong Presumption in Favor of Arete's Choice of Forum

Beacon argues that venue of this case should be transferred to Massachusetts for the convenience of the parties and witnesses under 28 U.S.C. § 1404(a). Beacon does not and cannot argue that the United States District Court for the Northern District of California does not have personal jurisdiction over it, or that venue is not proper in this Court. Beacon merely seeks to upset Arete's choice of a proper venue by arguing that it would be more convenient for it to try the case in Massachusetts.

It should be noted that Arete agrees with Beacon that venue would have been proper in the District of Massachusetts had Arete chosen to file it there. However, in order to prevail in its motion to transfer venue under 28 U.S.C. § 1404(a), Beacon must not only show that the case might have been brought in the proposed transferee district, but also has the burden of showing that the balance of conveniences weighs *heavily* in favor of the transfer in order to overcome the strong presumption in favor of the Plaintiff's choice of forum. *One Pass Water Blade, LLC v. Sun-Mate Corp.*, 2006 U.S. Dist. LEXIS 74319 at *13-14 (N.D. Cal. 2006); *Royal Queentex Enters. v. Sara Lee Corp.*, 2000 U.S. Dist. LEXIS 10139 at *6-7 (N.D. Cal. 2000) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)) (emphasis added). A motion to transfer merely shifting the inconvenience of litigation from one party to the other should be denied. *Dorfman v. Jackson*, 2005 U.S. Dist. LEXIS 32311 at *13 (N.D. Cal. 2005) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645-46, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)).

Courts in the Ninth Circuit use several considerations in weighing the relative convenience of two venues under section 1404(a), including 1) plaintiff's choice of forum, 2) convenience of the parties, 3) convenience of the witnesses, 4) ease of access to the evidence, 5) familiarity of each forum with the applicable law, 6) feasibility of consolidation of other claims,

1  7) any local interest in the controversy, and 8) the relative court congestion and time of trial in
2  each forum. *Id.* at *13-14; *Carolina Casualty Co. v. Date Broadcasting Corp.*, 158 F.Supp.2d
3  1044, 1048 (N.D. Cal. 2001); *Royal Queentex*, 2000 U.S. Dist. LEXIS 10139, 2000 WL 246599
4  at *2 (citing *Decker Coal Co.*, 805 F.2d at 843)). A plaintiff's choice of forum should rarely be
5  disturbed unless the balance of convenience factors under § 1404(a) is strongly in favor of a
6  defendant. *Applied Elastomerics, Inc. v. Z-Man Fishing Prods.*, 2006 U.S. Dist. LEXIS 75339
7  (N.D. Cal. 2006) (citing *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317
8  (9th Cir. 1985)). As Arete will show the Court, this is not one of those rare cases.

   **B.   Arete's Choice of a Proper Forum is Entitled to Great Weight Because Many If Not Most of the Operative Facts Have Occurred Here**

11  The first of the section 1404(a) factors, plaintiff's choice of forum, weighs heavily in
12  Arete's favor. In the Ninth Circuit and Northern District of California, there is a strong
13  presumption in favor of Arete's choice of forum. *One Pass Water Blade, LLC*, 2006 U.S. Dist.
14  LEXIS 74319 at *13-14; *Royal Queentex*, 2000 U.S. Dist. LEXIS 10139 at *6-7.

15  Beacon argues that Arete's choice of forum should be given less consideration because
16  Arete is not a resident of the Northern District of California and because the subject matter of the
17  litigation is not substantially connected to this forum. (Motion to Transfer, p. 15 - 16.) Beacon
18  cites to and relies on the Ninth Circuit's opinion in *Pac. Car & Foundry Co. v. Pence*, 403 F.2d,
19  949, 954 (9th Cir. 1968) as authority for this proposition. Beacon, however, misconstrues the
20  holding in *Pacific Car*. In that opinion, the Ninth Circuit held that, in deciding how much weight
21  to give to a plaintiff's choice of forum, that choice is entitled to only minimal consideration if the
22  operative facts have not occurred within that forum and that forum has no particular interest in
23  the parties or the subject matter. *Pac. Car & Foundry Co.*, 403 F.2d at 954. In deciding that the
24  defendant's motion to transfer venue should have been granted, the appeals court focused
25  primarily on the fact that the plaintiff's claim of injury had nothing to do with its chosen forum.
26  *Id.* at 955.

27  In contrast to the scenario presented to the Ninth Circuit in *Pacific Car*, many if not most
28  of the operative facts giving rise to Arete's claim of patent infringement occurred in the Northern

District of California. A patent is infringed if the defendant, without authorization, makes, uses, sells or offers to sell the patented invention during the term of the patent. 35 U.S.C. § 271. At the current time, Arete has firm evidence of only two instances where Beacon has committed acts which arguably constitute patent infringement. (Gabrys Decl., ¶15.) The first instance occurred between September 2005 and May of 2007 when Beacon installed and operated the accused FESS's in San Ramon, California. (Motion to Transfer, p.6.) The other occurred when Beacon installed and operated FESS's in Amsterdam, New York, between March of 2006 and March of 2007. (Id.) While Arete may well uncover other evidence of acts of patent infringement occurring in other locations, including Massachusetts, it was not in possession of any such evidence at the time it chose to file this patent infringement action in the Northern District of California. (Gabrys Decl., ¶15.) Is short, it was the operative facts occurring in the Northern District of California and, to a lesser extent, the State of New York that formed the basis for Arete's claim of patent infringement. Under these circumstances, there is no basis under Ninth Circuit precedent for minimizing the heavy weight that this Court should give to Arete's choice of forum.

### C. Transferring the Case to Massachusetts Would Merely Shift the Inconvenience From Beacon's Witnesses to Arete's Witnesses

Beacon's primary argument in favor of overriding Arete's choice of venue is that it would be more convenient for its witnesses. (See, generally, Motion to Transfer, p.11 – 15.) However, a close examination of the facts reveals that transferring the case to the District of Massachusetts would simply shift the inconvenience from Beacon's witnesses to Arete's witnesses. Thus, Beacon has not met its heavy burden of overcoming Arete's choice of forum.

In balancing the convenience of the witnesses, primary consideration is given to third party, as opposed to employee witnesses. *Royal Queentex,* 2000 U.S. Dist. LEXIS 10139 at *19; *Saleh v. Titan Corp.*, 361 F. Supp.2d 1152, 1160 (S.D. Cal. 2005). In addition, the court must consider not simply how many witnesses each side has and the location of each, but, rather, must consider the importance of the witnesses. *Saleh*, 361 F.Supp.2d at 1161; *see, also, Gates Learjet Corp. v. Jenson,* 743 F.2d 1325, 1335-36 (9th Cir. 1984) (holding that the district court

improperly focused on the number of witnesses in each location rather than examining the materiality and importance of the anticipated witnesses testimony and then determining their accessibility and convenience to the forum).

Some of the most important witnesses in any patent infringement case are the inventor(s), the plaintiff's engineering and marketing personnel, and the attorney(s) who prosecuted the patent-in-suit. It is through those witnesses that a defendant such as Beacon can challenge inventorship, as well as dates of conception and reduction to practice. Those witnesses may also critical to a defendant's invalidity case as they can often establish whether an invention was on sale or in public use more than one year prior to the date of the application for the patent under 35 U.S.C. § 102(b). In the instant case, none of these witnesses resides anywhere near the District of Massachusetts.

Dr. Christopher Gabrys is the sole named inventor of the patent-in-suit. (Gabrys Decl., ¶6.) He is also President and Chief Executive Officer of Arete, the owner of the patent-in-suit. (Gabrys Decl., ¶¶3, 5.) Dr. Gabrys is the person most knowledgeable about the technology embodied in the patent-in-suit, the meaning of the patent claims, the conception and reduction to practice of the claimed invention, and any disclosures of or offers to sell the invention to third parties prior to the date of application for the patent. (Gabrys Decl., ¶¶8-9.)

Dr. Gabrys resides in Reno, Nevada, where Arete has its principal place of business. (Gabrys Decl., ¶4.) Dr. Gabrys resides in a judicial district (the District of Nevada) that is immediately adjacent to the Northern District of California. His residence is approximately 225 miles and a three and one-half hour drive from the courthouse in Oakland. (Gabrys Decl., ¶¶16-17.) In the alternative, Dr. Gabrys can take advantage of non-stop flights that are available to travel from Reno to Oakland in approximately 50 minutes. (Gabrys Decl., ¶18.) It would be relatively convenient for Dr. Gabrys to attend trial in Oakland. (Gabrys Decl., ¶19.)

By way of contrast, it would be extremely inconvenient for Dr. Gabrys to attend trial in Boston. His residence in Reno is over 2500 miles from Boston. (Gabrys Decl., ¶21.) A search on Travelocity.com has failed to locate any non-stop flights operating between Reno and Boston. (Gabrys Decl., ¶22.)

       Timothy Rodgers is Secretary-Treasurer and Chief Operating Officer of Arete. (Gabrys Decl., ¶23.) Mr. Rodgers is the person most knowledgeable about the chain of ownership of the patent-in-suit. (Gabrys Decl., ¶24.) Mr. Rodgers resides in Santa Barbara, California (Gabrys Decl., ¶25.), which is located in the Central District of California, a judicial district which is immediately adjacent to the Northern District of California. *See* 28 U.S.C. § 84. According to Google maps, his residence is approximately 330 miles and a five hour and twenty minute drive from the courthouse in Oakland. (Gabrys Decl., ¶26.) In the alternative, Mr. Rodgers can take advantage of non-stop flights that are available to travel from Santa Barbara to San Francisco in approximately one hour and ten minutes. (Gabrys Decl., ¶27.) It would be relatively convenient for Mr. Rodgers to attend trial in Oakland. (Gabrys Decl., ¶28.)

       By way of contrast, it would be extremely inconvenient for Mr. Rodgers to attend trial in Boston. His residence in Santa Barbara is over 2500 miles from Boston. (Gabrys Decl., ¶29.) A search on Travelocity.com failed to locate any non-stop flights operating between Santa Barbara and Boston. (Gabrys Decl., ¶30.)

       Michael Neary is the patent attorney who prosecuted the patent-in-suit. (Gabrys Decl., ¶31.) Arete would likely have no reason to call Mr. Neary as a witness, as the patent-in-suit is presumed valid and the file history of its prosecution is a matter of public record at the United States Patent and Trademark Office. However, given that defendants often view the prosecuting attorney as a key witness in their attempts to prove invalidity, it does seem likely that Beacon would want to present his testimony at trial. Mr. Neary, a third-party, resides in LaPine, Oregon (Gabrys Decl., ¶31.) – again, in a judicial district immediately adjacent to the Northern District of California. According to Google maps, it is 456 miles from La Pine to Oakland and the driving time is approximately seven hours and twenty minutes. (Gabrys Decl., ¶32.) Non-stop flights are available from nearby Eugene, Oregon to San Francisco and take approximately one hour and thirty minutes. (Gabrys Decl., ¶33.)

       While it might take some effort to travel from La Pine to Oakland, it would be much more inconvenient for Mr. Neary to attend trial in Boston. His residence in La Pine, Oregon is over 2500 miles from Boston. (Gabrys Decl., ¶34.) A search on Travelocity.com failed to locate

any non-stop flights between Eugene and Boston. (Gabrys Decl., ¶35.) Because of the relative difficulty in attending trial in Boston, Mr. Neary has indicated to Dr. Gabrys that he would most likely be available to testify at trial in Oakland but not in Boston. (Gabrys Decl., ¶36.)

For its part, Beacon appears to have identified eleven fact witnesses it expects to testify at trial, and claims that each of them would be "extremely inconvenienced" if required to travel to Oakland for trial of this case. (See, generally, Motion to Transfer, pp. 6–8 and 11–15.) Beacon avers that it will present four fact witnesses – Messrs. Brackett, Kabir, Hockney and Arseneaux - who will testify about the design, development, function and operation of the accused FESS's. (Motion to Transfer, p. 5-6.) Mr. Hockney and Mr. Arseneaux are Beacon employees and reside in Massachusetts, while third-party witnesses Messrs. Brackett and Kabir reside in Massachusetts and New York, respectively. (Id.)

Beacon also identifies two fact witnesses, Mr. Wilkinson and Mr. Lazarewicz, who will testify about sales and marketing matters. (Id. at p.6) Mr. Wilkinson is an employee witness, while Mr. Lazarewicz is a third-party witness. Both reside in Massachusetts. (Id.)

Beacon identifies two additional witnesses, Mr. Arseneaux and Mr. Manganelli, with knowledge of how the accused FESS's were installed and used in San Ramon and Amsterdam, New York. (Id. at p.7.) Both are employees of Beacon who reside in Massachusetts. (Id.)

Finally, Beacon identifies four witnesses – Messrs. Favaloro, Hezzell, Moghe and Spears – who will testify about meetings between Beacon and Dr. Gabrys. (Id. at p.8.) Of these, only Mr. Spears is an employee. (Id.) Third-party witness Mr. Moghe apparently resides in Ohio, Mr. Hezzell in California, and Mr. Favaloro in Massachusetts. (Id.)

Beacon has identified an unusually large number of fact witnesses for a case involving only a claim for patent infringement and a counterclaim for a declaration of non-infringement and/or invalidity. There are three core issues associated with any patent infringement case: (a) whether the patent is infringed, (b) whether the patent is valid, and (c) the amount of damages. Much of the testimony that Beacon alleges that it must present from these witnesses appears to be peripheral to these issues and cumulative. For example, Beacon suggests that it needs four witnesses to testify about the design, development operation and function of its FESS's. (Motion

to Transfer, p. 6-7.) However, the issue of whether a claim of the patent-in-suit is infringed is resolved by a straightforward comparison of the elements of that claim to the features of the accused FESS systems. *See Canton Bio-Meidcal, Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000). Arete, for its part, will certainly not call four witnesses to describe the design of the accused systems or recount the history of how Beacon arrived at that design. To the extent that Beacon somehow feels the need to describe the design, development and operation of its own FESS's as part of its invalidity case, that task could certainly be handled by a single witness, Beacon's chief engineer Hockney, who Beacon avers "is familiar with the design and development of the Accused Products." (Motion to Transfer, p.7.) The testimony that Beacon seeks to present from the other three fact witnesses on this topic appears to be cumulative and would likely be barred by a trial judge.

      Beacon also suggests that it needs two witnesses, Messrs. Arseneaux and Manganelli, to testify about financial accounting for the two projects in which the FESS systems were installed, but does not explain why this testimony is important to any issue in the case as required by Ninth Circuit precedent. *See, e.g., Royal Queentex*, 2000 U.S. Dist. LEXIS 10139 at *18 (to demonstrate inconvenience of the witnesses, the moving party must produce information regarding why their testimony is relevant to the action). Because Beacon has not produced any information about why this accounting testimony is relevant to this patent infringement action, it should not be considered in weighing the convenience of the witnesses. *Id.* Even if one assumes that this testimony might produce information about the cost of the two FESS system installations and, thus, be arguably relevant to the issue of damages, the testimony of two witnesses on the same topic would again be cumulative and likely barred by a trial judge.

      Beacon further suggests that it needs four witnesses – Messrs. Favaloro, Hezzell, Moghe and Spears – to testify about meetings between Beacon and Dr. Christopher Gabrys before Dr. Gabrys filed the application for the patent-in-suit. (Motion to Transfer, p.8, 13-14.) Only two such meetings took place, and they were held to discuss the design of composite flywheels, not the hybrid bearing systems claimed in the patent-in-suit. (Gabrys Decl., ¶¶37-39.) Once again, Beacon fails to produce information as to precisely why the testimony of the witnesses is

relevant to this patent infringement action; thus, it should be accorded no weight in weighing the convenience of the witnesses. *Royal Queentex,* 2000 U.S. Dist. LEXIS 10139 at *18. Even if one assumes that such testimony is somehow relevant to Beacon's invalidity defense, the testimony of four witnesses regarding the subject matter that was discussed at those meetings would again be cumulative, particularly since the meetings concerned topics not directly related to the claimed invention.

Similarly, Beacon avers that it needs the testimony of two witnesses, Messrs. Wilkinson and Lazarewicz, on the sales and marketing of the accused FESS systems. (Motion to Transfer, p. 8 and 13.) Beacon avers that their testimony is relevant to Beacon's non-infringement and invalidity defenses, but fails to provide any specifics about the content of their testimony. As such, their testimony should not be considered in weighing the convenience of the witnesses. Moreover, the testimony would again appear to be cumulative.

The information submitted by Beacon about its eleven fact witnesses strongly suggests that these proposed witnesses would be submitting cumulative information about peripheral issues. As such, their testimony should not be accorded great weight in determining the inconvenience of the witnesses. It seems unlikely that a trial judge would allow all eleven witnesses to testify at trial when it appears that the evidence could be developed through the testimony of four. If additional witness testimony is required to elicit a few specific bits of evidence, this testimony could easily be developed in depositions of the witnesses taken near their homes. Edited video excerpts of the depositions would then be shown to the jury at trial, obviating the need for these witnesses to attend.

It would also appear that Beacon has overstated the contribution and importance of these eleven fact witnesses. Expert testimony often drives modern patent litigation. *See, e.g., Stuart Mershon v. Sling Media, Inc.,* 2007 U.S. Dist. LEXIS 48613 at *5 (E.D. Tex. 2007). It is quite possible that both Arete and Beacon will present much of their cases at trial through experts who will offer opinions on the three ultimate issues in the case: (a) whether the FESS systems produced by Beacon infringe the patent-in-suit, (b) whether the patent-in-suit is invalid, and (c)

the amount of damages suffered by Arete. The testimony of Beacon's fact witnesses would seem to be necessary only to establish some of the underlying facts supporting that testimony. . .

Arete also notes that only six of the eleven witnesses identified by Beacon are third parties. (Motion to Transfer, p. 6-8.) However, it is these third-party witnesses upon whom the Court is required to primarily focus in analyzing witness convenience. *Royal Queentex,* 2000 U.S. Dist. LEXIS 10139 at *19; *Saleh v. Titan Corp.*, 361 F. Supp.2d at 1160.

In reviewing the convenience of potential third-party witnesses, the balance does not tip heavily towards trying the case in Massachusetts. Of the six third-party witnesses identified by Beacon, three reside in Massachusetts, one in New York, one in Ohio, and one in California. (Motion to Transfer, p. 6-8.) Michael Neary, who is perhaps the key third-party witness on the issue of invalidity, resides in Oregon in a judicial district adjacent to the Northern District of California. Even if the Court permits all six Beacon third-party witnesses to give what appears to be overlapping testimony, it cannot be said that the balance of conveniences of the third-party witnesses as a whole tips heavily towards Massachusetts, at least not heavily enough to overcome the strong presumption in favor of Arete's choice of forum. If the trial were held in Massachusetts, four of the seven third-party witnesses identified to this point by the parties would still have to travel a considerable distance to trial.

### D. The Other Section 1404(a) Factors Do Not Weigh Heavily in Either Party's Favor

After plaintiff's choice of forum and convenience of the witnesses, the remaining section 1404(a) factors include: (a) convenience of the parties, (b) ease of access to the evidence, (c) familiarity of each forum with the applicable law, (d) feasibility of consolidation of other claims, any local interest in the controversy, and (e) the relative court congestion and time of trial in each forum. *Dorfman,* 2005 U.S. Dist. LEXIS 32311 at *13; *Carolina Casualty,* 158 F.Supp.2d at 1048; *Royal Queentex,* 2000 U.S. Dist. LEXIS 10139, 2000 WL 246599 at *2 (citing *Decker Coal Co.,* 805 F.2d at 843)).

With respect to the convenience of the parties, Arete concedes that it would be less convenient for Beacon to try this case in the Northern District of California than in

Massachusetts. However, it would be just as inconvenient for Arete if the case were transferred to Massachusetts. Arete's principal place of business is in Reno, Nevada, which is located immediately adjacent to the Northern District of California and a relatively short drive from the courthouse in Oakland. (Gabrys Decl., ¶¶4, 16-17.) Dr. Christopher Gabrys, Arete's President and CEO, lives in Reno. (Gabrys Decl., ¶¶3-4.) All of Arete's documents and other evidence are located in Reno and can easily be transported by automobile to the courthouse in Oakland if that becomes necessary. (Gabrys Decl., ¶¶10, 20.) By way of contrast, it would be extremely burdensome for Dr. Gabrys to travel back and forth to Boston. Driving is out of the question given the distance. There are no non-stop flights between Reno and Boston. (Gabrys Decl., ¶22.) Getting documents and other evidence to Boston would require shipping them across country via courier service. Transferring the case to Massachusetts merely shifts the inconvenience of litigation from Beacon to Arete. Under those circumstances, the "convenience of the parties" factor is neutral in the analysis, not weighing in favor of one party or the other.

For similar reasons, the ease of access to the evidence factor is also neutral. Beacon avers that all parties would have better access to its documents and the accused products in Massachusetts. However, as discussed above, Arete has better access to its documents and other evidence if the case remains in a venue that is a short drive from Arete's principal place of business.

With respect to the familiarity of each forum with the applicable law, this factor is also neutral. This case is governed by federal patent law. Presumably the courts in the Northern District of California and the District of Massachusetts are equally familiar with that law.

With respect to the feasibility of consolidation with other claims, this is a non-factor as the parties do not currently have any other related litigation pending, and Arete has not asserted the patent-in-suit against any other parties.

E. **This Patent Case Can Be Litigated More Efficiently Under the Local Patent Rules Adopted By This Court But Not Available In Massachusetts**

With respect to the final section 1404(a) factor, the relative court congestion and time of trial in each forum, Beacon argues that it favors transfer because the average court in the

1  Northern District of California had approximately twice as many civil cases as its counterpart in
2  the District of Massachusetts in the year ending March 31, 2006. (Motion to Transfer, p.15.)
3  While Arete does not dispute the almost two-year-old data cited by Beacon, Arete would point
4  out that this data does not necessarily correlate to relative time to trial in each jurisdiction, and
5  that Beacon has not attempted to provide any such data.  In addition, docket congestion is, at
6  best, a relatively minor factor in the section 1404(a) calculus. *Royal Queentex*, 2000 U.S. Dist.
7  LEXIS 10139 at *24.
8       Offsetting any perceived benefit to the parties of a transfer to the District of
9  Massachusetts from reduced court congestion there is the impact of the Patent Local Rules in the
10 Northern District of California. In addition to not providing any data about time to trial, the
11 Massachusetts data cited by Beacon does not provide any data for patent cases, which often have
12 special rules and proceedings, and present courts with a layer of complexity not found in many
13 other civil actions. *See. e.g., T-Netix, Inc. v. Global Tel*Link Corp.*, 2007 U.S. Dist. LEXIS
14 71510 at * 12 (E.D. Tex. 2007). As courts in other jurisdictions have recognized, the Patent
15 Local Rules of the Northern District of California are designed to streamline complex patent
16 litigation and help the parties realize substantial efficiencies. *Datamize, Inc. v. Fidelity
17 Brokerage Serv., LLC,* 2004 U.S. Dist. LEXIS 29100 at *30 (E.D. Tex. 2004). A review of the
18 website of the United States Court for the District of Massachusetts indicates that there are no
19 local patent rules in that District. Thus, it is entirely possible that the structure, discipline and
20 tight deadlines imposed by the Patent Local Rules adopted by this Court would result in
21 efficiencies that would not only shorten the time to trial over what might be available in the
22 District of Massachusetts, but also reduce the cost of litigation for both parties. Thus, the "time
23 to trial" factor could very well tip in favor of keeping the case in the Northern District of
24 California.
25      //
26      //
27      //
28      //

### IV. Conclusion

For the reasons set forth above, Beacon has not overcome the strong presumption in favor of Arete's choice of forum. Because Beacon has not met its burden showing that the balance of conveniences weighs heavily in its favor, its motion to transfer venue under 28 U.S.C. § 1404(a) should be denied.

Dated: January 16, 2008

DERGOSITS & NOAH LLP

/s/
By: Michael E. Dergosits
    Attorney for Plaintiff Arete Power, Inc.

Edward W. Goldstein (Of Counsel)
Texas Bar No. 08099500
Michael J. Collins (Of Counsel)
Texas Bar No. 04614510
Jody M. Goldstein (Of Counsel)
Texas Bar No. 24002153
**Goldstein, Faucett & Prebeg, LLP**
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 – Telephone
(713) 877-1737 – Facsimile
E-mail: egoldstein@gfpiplaw.com
E-mail: mcollins@gfpiplaw.com
E-mail: jgoldstein@gfpiplaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Civil L. R. 5-6 on January 16, 2008.

Dated: January 16, 2008                                     DERGOSITS & NOAH LLP

/s/
By: Michael E. Dergosits
    Attorney for Plaintiff Arete Power, Inc.

Edward W. Goldstein (Of Counsel)
Texas Bar No. 08099500
Michael J. Collins (Of Counsel)
Texas Bar No. 04614510
Jody M. Goldstein (Of Counsel)
Texas Bar No. 24002153
**Goldstein, Faucett & Prebeg, LLP**
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 – Telephone
(713) 877-1737 – Facsimile
E-mail: egoldstein@gfpiplaw.com
E-mail: mcollins@gfpiplaw.com
E-mail: jgoldstein@gfpiplaw.com