Steven M. Cowley (MA Bar No. 554534) (pro hac vice)
David G. Conlin (MA Bar No. 094220) (pro hac vice)
Elizabeth Anderson Spinney (MA Bar No. 657848) (pro hac vice)
EDWARDS ANGELL PALMER & DODGE, LLP
111 Huntington Ave.
Boston, MA 02199
Telephone (617) 239-0100
Facsimile (617) 227-4420
scowley@eapdlaw.com
dconlin@eapdlaw.com
espinney@eapdlaw.com

Neil A. Smith, Cal. Bar No. 63777
Nathaniel Bruno, Cal. Bar No. 228118
SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone (415) 434-9100
Facsimile (415) 434-3947
nsmith@smrh.com
nbruno@smrh.com

Attorneys for Defendant Beacon Power Corporation

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ARETE POWER, INC., <br><br> Plaintiff, <br> vs. <br><br> BEACON POWER CORPORATION, <br><br> Defendant. | **Case No. 07-5167 (WDB)** <br><br> **DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO TRANSFER VENUE** <br><br> **Hearing: February 6, 2008, 1:30 p.m.** <br><br> **Courtroom: Magistrate Judge Wayne D. Brazil, Oakland, CA** |

**I.     STATEMENT OF ISSUES**

Should this Court transfer venue of this patent litigation to the District of Massachusetts for the convenience of the parties and witnesses under 28 U.S.C. § 1404(a)?

**II.    STATEMENT OF FACTS**

Beacon hereby incorporates by reference the facts stated in its Memorandum of Points and Authorities in Support of Defendant's Motion to Transfer Venue. (Mem. of Points and Authorities in Support of Def.'s Mot. to Transfer Venue, D.I. 10, "Mem.")

**III.   THIS COURT SHOULD GRANT THE DEFENDANT'S MOTION TO TRANSFER VENUE**

Defendant Beacon Power Corporation ("Beacon") is entitled to a transfer of venue to the District of Massachusetts under 28 U.S.C. § 1404(a) because the District of Massachusetts is a proper and more appropriate venue for this patent suit involving a Nevada corporation and a Massachusetts corporation in which the operative facts that have led to this dispute, including that the design, development, and manufacture of the flywheel energy storage system (FESS) units ("Accused Products"), occurred in Massachusetts; and where neither the parties nor any of the expected witnesses reside in the Northern District of California, but Beacon and eight witnesses, including several third-party witnesses, reside in the District of Massachusetts.

**A.   <u>Arete Is Not Entitled to a Presumption in Favor of Its Choice of Forum Because It Is Not a Resident and the Operative Facts Occurred in Massachusetts</u>**

Arete erroneously asks this Court to give great deference to its choice of the Northern District of California as the forum to resolve this patent dispute, but the law makes clear that the plaintiff's choice carries minimal weight when the plaintiff is not a resident of the forum, see Catch Curve, Inc. v. Venali, Inc., No. 05-04820, 2006 WL 4568799, at *2 (C.D. Cal. Feb. 27, 2006); Toy v. General Elec. Co., No. 95-20060, 1995 WL 396848, at *2 (N.D. Cal. June 27, 1995), as is the case here. Arete has admitted that it does not have a place of business in the Northern District of California. (Pl.'s Br. in Opp'n to Def.'s Mot. to Transfer Venue, D.I. 24, "Plaintiff's Br." or "Opposition" at 1.) For that reason alone, Arete's choice of forum should be given minimal consideration. Still, the point is further supported by the fact that the operative facts that led to this infringement dispute occurred in the forum to which Beacon seeks transfer.

1    Arete correctly states that its "choice is entitled to only minimal consideration if the
2    operative facts have not occurred within that forum and that forum has no particular interest in
3    the parties or the subject matter." (Pl.'s Br. at 5; see Pac. Car & Foundry Co. v. Pence, 403 F.2d
4    949, 954 (9th Cir 1968); Catch Curve, 2006 WL 4568799, at *2.) Arete incorrectly assumes,
5    however, that the operative facts that are relevant for this purpose is the fact that Beacon shipped
6    one array of flywheel energy storage system (FESS) units (Accused Products) to the
7    Commission for Environmental Cooperation ("CEC") in San Ramon, California (the "CEC
8    Array"). (Pl.'s Br. at 6.) That system was shut down on December 22, 2006, was returned to
9    Beacon on May 10, 2007, and remains in Massachusetts to this day. (Mem. at 6; Second
10   Declaration of Richard Hockney filed herewith, "Hockney Decl. II," ¶ 3.) The fact that the CEC
11   Array was located in California for about twenty months does nothing to substantially connect
12   California to this case. Before the CEC Array ever left Massachusetts, the FESS units were
13   vacuum-sealed in thick steel containers and were maintained that way the entire time they were
14   in California. (Hockney Decl. II ¶ 4, Fig. 1.) In fact, the FESS units can only operate as long as
15   they remain in such a vacuum. (Id.) It was impossible for anyone in California to see any of the
16   contents or components of the FESS units. Accordingly, there is no California witness who
17   could have acquired any knowledge relevant to the question whether the CEC Array infringed
18   U.S. Patent No. 6,710,489 (the "'489 Patent") merely by observing the units in California.

19   In fact, the relevant operative facts that Arete concedes are central to resolution of
20   Beacon's motion actually took place in Massachusetts, not in California. In patent infringement
21   cases, the "operative facts" are considered to have occurred in the forum in which the
22   infringement took place and where the defendant's business records are located. B&B
23   Hardware, Inc. v. Hargis Indus, Inc., No. 06-4871, 2006 WL 4568798, at *4 (C.D. Cal. Nov. 30,
24   2006). The infringement is said to occur in the location of the design, development and
25   production of the infringing product. Id. It is undisputed that Beacon's place of business has
26   been located in the District of Massachusetts throughout the entire time period relevant to this
27   dispute. As such, the design, development, and manufacture of the Accused Products as to
28   which testimony at trial will be offered all occurred in Massachusetts. In addition, the Accused

---
DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO TRANSFER VENUE –
C 07-5167 (WDB)
2

1  Products have been located in Massachusetts since May 2007 (Mem. at 6; Hockney Decl. II ¶ 3),
2  and any documentation relating to the design, development, and manufacture of the Accused
3  Products also is located in Massachusetts (Mem. at 15; see Steelcase, Inc. v. Haworth, Inc., No.
4  96-1964, 1996 WL 806026, at *4 (C.D. Cal. May 15, 1996) ("Another factor considered by the
5  court when deciding whether to transfer a case under Section 1404(a) is the relative ease of
6  access to proof."); see also B&B Hardware, 2006 WL 4568998, at *4 ("[T]he district court
7  'ought to be as close as possible to the milieu of the infringing device and the hub of activity
8  centered around its production.'") (internal quotation marks omitted) (emphasis added)).

9  Arete's unsupported assertion that the operative facts occurred in California because one
10 array of Accused Products was temporarily located in that state simply misconstrues the facts
11 that are relevant to its infringement claim. Even if Beacon had sold, rather than just shipped for
12 demonstration purposes (Hockney Decl. II ¶ 5), the Accused Products in California, Arete's
13 choice of this forum would not be entitled to the "strong presumption" it requests. See Steelcase,
14 1996 WL 806026, at *2 (granting a transfer of venue out of the Northern District of California
15 when the only connection to the forum was that the defendant had sold some allegedly infringing
16 products in California). Rather, because the operative facts occurred in Massachusetts, and
17 because neither party has a place of business in California, Arete is not entitled to a significant
18 presumption in favor of its choice of forum on which its Opposition relies, and the case should
19 be transferred to the District of Massachusetts.

**B. The Greatest Inconvenience to the Greatest Number of Witnesses and Parties Can Be Avoided by Transferring this Case to the District of Massachusetts**

22 All witnesses for both parties would be inconvenienced by having to travel some distance
23 if this case remains in the Northern District of California. Neither party has identified a single
24 witness who resides in this forum. Beacon has identified ten witnesses who would be extremely
25 inconvenienced by a trial in California,[1] and Arete has identified three witnesses who it claims

---

[1] Those witnesses include Omar Kabir ("Kabir"), Norman Brackett ("Brackett"), Richard Hockney ("Hockney"), James Arseneaux ("Arseneaux"), Mark Manganelli ("Manganelli"), Harvy Wilkinson ("Wilkinson"), Matthew Lazarewicz ("Lazarewicz"), Michael Favaloro ("Favaloro"), Sharad Moghe ("Moghe"), and Ward Spears ("Spears"). Beacon witness David

would be inconvenienced by having to travel to Massachusetts. Of those three, however, two are Arete employees whose inconvenience is not considered as significant as the convenience of non-party witnesses. See Royal Queentex Enters., Inc. v. Sara Lee Corp., 2000 WL 246599, at *6 (N.D. Cal. Mar. 1, 2000) (stating that primary consideration is given to third-party, as opposed to employee, witnesses); see also Broadcast Data Retrieval Corp. v. Sirius Satellite Radio, Inc., No. 06-1190, 2006 WL 1582091, at *2 (C.D. Cal. June 6, 2006); Catch Curve, 2006 WL 4568799, at *3.

Arete admits that it has no reason to believe that it will actually call the third witness it identified, J. Michael Neary ("Neary"), to testify at trial. (Pl.'s Br. at 8, "Arete would likely have no reason to call Mr. Neary as a witness . . . .") Inexplicably, Arete asks this Court to speculate that Beacon will call attorney Neary as a trial witness. In fact, although Arete labels Neary a third-party witness, Neary was still working as patent attorney for the current President of Arete, Christopher Gabrys ("Gabrys"), at least as of September 11, 2007. (See U.S. Patent No. 7,267,028, attached hereto as Exhibit A (naming J. Michael Neary as the prosecuting attorney).) Even if he were no longer working for Gabrys or Arete, courts often consider former attorneys party witnesses because, as one court noted, attorneys "have the obligation to make themselves available to assist their former clients, if requested." See, e.g., Samsung Elec. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 719 (E.D. Va. 2005); see also Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707 F. Supp. 1429, 1439 (D. Del. 1989).[2] As such, Arete has given this Court no reason to consider Neary a third-party witness.

On the other hand, Beacon has identified five third-party witnesses who would be extremely inconvenienced by having to participate in a trial in California, three of whom, in addition to five Beacon employee witnesses, reside in the District of Massachusetts. Accordingly, the greatest inconvenience to the greatest number of witnesses and parties can be

---

Hezzell ("Hezzell") lives, according to publicly available information, in California, but far outside the forum. (Mem. at 8.)

[2] But see Sherwood Med. Co. v. IVAC Med. Sys. Inc., No. 96-305, 1996 WL 700261, at *4 (D. Del. Nov. 26, 1996) (while not specifically addressing the issue, implying that former attorneys and employees may be in separate witness categories).

---

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO TRANSFER VENUE –
C 07-5167 (WDB)
4

avoided by transferring this case to the District of Massachusetts.  See Broadcast Data, 2006 WL 1582091, at *2 (concluding that witnesses' inconvenience "is often the most important factor considered by the Court when deciding a motion to transfer under Section 1404(a)"); see also Troyer v. Karcagi, 488 F. Supp. 1200, 1207 (S.D.N.Y. 1980) (holding that transfer to Ohio was appropriate where most witnesses reside in Ohio even though two witnesses reside in the original forum in New York).

Contrary to Arete's unsupported assertion, each of Beacon's witnesses is very important to its infringement and invalidity cases, and each has unique, non-cumulative testimony to offer to the Court.  Arete's suggestion otherwise ignores the fact that Beacon's current and former engineering personnel, Kabir, Brackett, and Hockney, each have different areas of expertise and focus their engineering work accordingly, each worked at Beacon at different times,[3] and therefore will provide unique, yet significant, testimony regarding the Accused Products.  Kabir is most familiar with the engineering of the dampening systems, which is a very significant part of FESS system technology, and of the state of the art at the time that the application for the '489 Patent (the "Application") was filed.  (Mem. at 7, 13, Mem. Ex. A ¶ 12; Hockney Decl. II ¶ 6.)  Kabir is also generally knowledgeable regarding the technology embodied in the TelCom Units, which Beacon began shipping before the Application was filed.  As such, Beacon expects that Kabir's testimony will support Beacon's invalidity defense, while other engineers will testify about issues relevant to the infringement claim.  For example, Brackett's expertise lies in the structure and use of the dampening systems embodied in the FESS units and the related issue of transferring heat out of the systems.  (Hockney Decl. II ¶ 7.)  As a result, Beacon expects he will testify regarding the technological aspects of the individual FESS units that were used in the CEC array and the array shipped to the New York State Energy Research and Development Authority in Amsterdam, New York (the "NYSERDA Array").  (Mem. at 7, 13, Mem. Ex. A ¶ 12; Hockney Decl. II ¶ 7.)

---

[3] Hockney has worked at Beacon since 1997, Kabir worked at Beacon from January 1998 to July 2000, and Brackett from May 1999 to June 2003.  (Hockney Decl. II ¶ 1, 8.)

---

1  Arete inappropriately asks this Court to disregard the inconvenience of the majority of
2  Beacon's witnesses, contending without support that they are not important to this case.  To the
3  contrary, and acknowledging that it is always difficult to establish with certainty a list of trial
4  witnesses at the initial pleadings stage, Beacon has identified non-duplicative witnesses with
5  important testimony to provide on the issues in dispute between the parties.  For example,
6  Beacon witnesses Arseneaux, who will testify regarding the two projects in which the Accused
7  Products were installed (the CEC and NYSERDA Arrays), and Manganelli, who will testify
8  regarding the accounting for those projects (Mem. at 7, 13, Mem. Ex. A ¶ 14), are both important
9  witnesses.[4]  Beacon expects that Arseneaux will testify regarding how the technology of the
10 FESS units was used in the CEC and NYSERDA Arrays.  (Id.).  Based on the conclusory
11 allegations of Arete's Complaint, Beacon expects at this time that Arseneaux's testimony will be
12 important to counter Arete's allegation that Beacon's use of those Arrays infringed the '489
13 Patent (Compl. ¶ 8).  The testimony from Manganelli regarding the projects' accounting, as
14 Arete correctly acknowledges (Pl.'s Br. at 10), will be essential to the issue of damages.

15  Although Arete has claimed that Beacon has not provided enough detail regarding the
16 specific testimony to be given by these witnesses, providing any further level of detail at this
17 time is impossible in light of Arete's bare-bones Complaint.  To date, Arete has not stated the
18 grounds for its infringement contentions with any specificity, even when purporting to describe
19 its witnesses' expected testimony in its Opposition.  The only information Beacon has regarding
20 Arete's infringement position is the conclusory allegation regarding certain Beacon products in
21 its Complaint.  (Compl. ¶ 8-9, D.I. 1.)  Based on the bare-bones allegations in the Complaint,
22 Beacon has provided all the detail it can regarding the anticipated testimony of its engineer
23 witnesses to counter Arete's claim of infringement.

24  Similarly, Beacon has provided as much information about the expected testimony of its
25 sales and marketing witnesses, Wilkinson and Lazarewicz, as Arete's bare-bones Complaint

---

[4] Arete misread Beacon's brief to conclude that both Arseneaux and Manganelli were to testify regarding the accounting of both projects.  Only Manganelli would testify regarding accounting and as such, their testimony would not be cumulative, as Arete suggests (Pl.'s Br. at 10).

allows. Based on Arete's conclusory allegations, Wilkinson is expected to provide important testimony regarding the marketing of Beacon's TelCom Units[5] (Mem. at 8, 13, Mem. Ex. A ¶ 16) that will be relevant to Beacon's invalidity defenses. Beacon expects that Wilkinson's testimony will be important to establish that one or more claims of the '489 Patent were anticipated and, therefore, invalid. That expectation may change when Arete produces information concerning its infringement contentions, but Beacon has provided as much information about Wilkinson's testimony as it currently is able. Similarly, Beacon has disclosed all that it is currently able concerning Lazarewicz's expected testimony regarding the marketing and sales of the frequency regulation arrays that will be relevant to Beacon's non-infringement and invalidity defenses and damages arguments. (Mem. at 8, 13, Mem. Ex. A ¶ 17.)

Arete has further claimed that Beacon did not provide enough information regarding the testimony of four witnesses, Favaloro, Hezzell, Moghe, and Spears, who would testify regarding meetings in Massachusetts and other dealings between Beacon and Gabrys relating to flywheel energy storage systems that occurred before the Application was filed. (Mem. at 8, 13-14, Mem. Ex. A ¶ 15.) This testimony will be relevant to Beacon's invalidity defense, as Arete acknowledges (Pl.'s Br. at 10-11). These witnesses' testimony will not be cumulative because the four witnesses identified were present at different meetings and have knowledge about different aspects of Beacon's dealings with Gabrys.[6] (Hockney Decl. II ¶ 9.) While Arete contends that this is not enough, it cites no authority in support of its assertion that Beacon need produce anything more than information regarding the identity and location of witnesses, the content of their testimony, and why such testimony is relevant to the action, Royal Queentex, 2000 WL 246599, at *6, as it has done. In short, Beacon will not be in a position to provide any further detail regarding the expected testimony of its witnesses until Arete provides explanations

---

[5] Specifically, the TelCom Units are FESS units that Beacon shipped to various locations for use in the telecommunications industry before the '489 Patent issued. (Mem. at 5, Mem. Ex. A ¶ 5.)

[6] Although Arete claims that there were only two meetings with Gabrys, even if that were true, the testimony of Beacon's witnesses will not be limited to the two meetings Gabrys acknowledges. Beacon's witnesses had other interactions and dealings with Gabrys and their testimony is expected to address all relevant contacts, not just the two meetings Gabrys prefers to discuss. (Mem. at 8, 14, Mem. Ex. A ¶ 16.)

of its infringement contentions and damage claims, but, Arete chose not to provide such explanations in its Opposition.

Because the parties, the witnesses, and the operative facts have nothing to do with the forum, and because the great majority of witnesses, including at least five third-party witnesses, would be extremely inconvenienced by a trial in California, this Court should transfer this action to the District of Massachusetts.

## IV.   CONCLUSION

For the foregoing reasons, this Court should grant Defendant's Motion to Transfer Venue.

Dated: January 23, 2008   BEACON POWER CORPORATION

By its attorneys,

        /s/ Nathaniel Bruno
Steven M. Cowley (MA Bar No. 554534) (pro hac vice)
David G. Conlin (MA Bar No. 094220) (pro hac vice)
Elizabeth A. Spinney (MA Bar No. 657848) (pro hac vice)
EDWARDS ANGELL PALMER & DODGE, LLP
111 Huntington Ave.
Boston, MA 02199
Telephone (617) 239-0100
Facsimile (617) 227-4420
scowley@eapdlaw.com
dconlin@eapdlaw.com
espinney@eapdlaw.com

Neil A. Smith, Cal. Bar No. 63777
Nathaniel Bruno, Cal. Bar No. 228118
SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone (415) 434-9100
Facsimile (415) 434-3947
nsmith@smrh.com
nbnruno@smrh.com